# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ASHLEY GENNOCK and JORDAN BUDAI, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs | ) ) | Civil Action No. 17-454 Judge Cercone |
| KIRKLAND'S, INC., | ) ) | Magistrate Judge Mitchell |
| Defendant. | ) | |

I. <u>Recommendation</u>

It is respectfully recommended that the defendant's motion to dismiss (ECF No. 7) be denied.

II. <u>Report</u>

Plaintiffs, Ashley Gennock and Jordan Budai, bring this action individually and on behalf of all others similarly situated against Defendant, Kirkland's, Inc., alleging violations of the Fair and Accurate Credit Transactions Act, 15 U.S.C. § 1681c(g) (FACTA). Specifically, they allege that Kirkland's handed them paper receipts on several occasions that displayed more than the last five digits of their credit card numbers, contrary to the express requirements of the Act.

Presently before the Court is Defendant's motion to dismiss the Complaint on the grounds that Plaintiffs lack standing to bring this case because they have not suffered any injury as a result of Defendant's alleged improper redaction, and also on the grounds that Plaintiffs cannot state a claim that Defendant willfully violated the Act, which—in the absence of actual damages—is the only basis upon which Plaintiffs could recover statutory and punitive damages. For the reasons that follow, Defendant's motion should be denied.

<u>Facts</u>

Ashley Gennock states that, on or about April 8, 2017, she made multiple purchases with

her personal credit/debit card at the Kirkland's store located in Grove City, Pennsylvania. She states that, on more than one occasion, Kirkland's provided her with a paper receipt which displayed the first six and last four digits of her personal credit/debit card, in violation of FACTA's requirements. She has retained some, but not all, of her FACTA-violating receipts. She alleges that she "is at increased risk of identity theft and payment card fraud—the precise harm Congress sought to prevent with its passage of FACTA." (Compl. ¶¶ 15-16.)[1]

Jordan Budai similarly states that, on or about February 18, 2017, he made a purchase with a personal credit/debit card at the Kirkland's store located in Grove City, Pennsylvania and that he has made several other purchases from Kirkland's; that, on more than one occasion, Kirkland's provided him with a paper receipt which displayed the first six and last four digits of his personal credit/debit card, in violation of FACTA's requirements; and that he has retained some, but not all, of the FACTA-violating receipts. He alleges that he "is at increased risk of identity theft and payment card fraud—the precise harm Congress sought to prevent with its passage of FACTA." (Compl. ¶¶ 17-18.)

Both Plaintiffs note that Kirkland's operates approximately 376 retail stores in 35 states and they allege that it was routinely presenting paper receipts to its customers at the point of sale at its various retail stores which displayed more than the last five digits of the customers' credit and/or debit cards, in violation of the requirements of FACTA. (Compl. ¶¶ 19-20.) They allege that Kirkland's had actual knowledge of FACTA's truncation requirements or acted recklessly with respect to them, specifically the requirement that no more than the last five digits of credit and debit cards be printed on receipts presented to consumers at the point of sale. They further allege that Kirkland's has had agreements with various credit card issuers, including VISA,

---

[1] ECF No. 1.

Mastercard, American Express and others, which would have apprised Kirkland's of its obligation to truncate credit and debit card account numbers; that Kirkland's received periodic communications from credit card issuers and/or its merchant bank advising it of its obligation; that it received monthly statements from its merchant bank or other similar entity that would have apprised it of this obligation; that it should have received this information from its Point of Sale provider; and that it should have received it from trade association and/or other similar entities. (Compl. ¶¶ 47-52.)

Procedural History

Plaintiffs filed this action on April 10, 2017. Federal question jurisdiction is based on the FACTA claim, 28 U.S.C. § 1331; 15 U.S.C. § 1681p. They bring this action on behalf of all others similarly situated pursuant to Rule 23(a) and (b) of the Federal Rules of Civil Procedure. (Compl. ¶¶ 53-54.) They seek an order certifying the class and appointing them as class representatives with their counsel as class counsel, an award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1)(A) for Defendant's willful violations, an award of punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), payment of costs of suit and reasonable attorney's fees pursuant to 15 U.S.C. § 1681n(a)(3), and other and further relief as the Court may deem proper. (Compl. at 18-19.)

On July 31, 2017, Defendant filed a motion to dismiss (ECF No. 7). On August 14, 2017, Plaintiffs filed a brief in opposition (ECF No. 11). On August 31, 2017, Defendant filed a reply brief in support of its motion (ECF No. 18). On September 7, 2017, Plaintiffs filed a sur-reply brief (ECF No. 20).

Defendant argues that: 1) Plaintiffs lack standing because they suffered no injury; and 2) they cannot state a claim for relief on the basis that Kirkland's acted willfully.

Plaintiffs respond that: 1) they have satisfied the requirement of standing because the Supreme Court has held that Congress has the power to elevate some intangible harms, including exposure to risks of criminal activity, into injuries that are actionable without evidence of additional harm; and 2) "willfulness" means either "knowing" or "reckless" and they have plausibly alleged that Kirkland's actually knew that FACTA prohibited the printing of the first six digits of a card account number but continued to do so anyway.

In its reply brief, Defendant argues that: 1) Plaintiffs have cited cases in which concrete harms had actually occurred, but here no harms have occurred; and; 2) a defendant's actual knowledge of a statute's requirements is not enough to establish a willful violation.

Standing

"A motion to dismiss for want to standing is … properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007) (citations omitted). The Court of Appeals has explained that:

> In evaluating whether a complaint adequately pleads the elements of standing, courts apply the standard of reviewing a complaint pursuant to a Rule 12(b)(6) motion to dismiss for failure to state a claim: "Court[s] must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party." Ballentine, 486 F.3d at 810 (citing Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)); see also Baldwin v. Univ. of Pittsburgh Med. Ctr., 636 F.3d 69, 73 (3d Cir. 2011) ("A dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim."). The Supreme Court most recently explained this standard in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009): "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955)….
>
> "A complaint has to 'show' such an entitlement with its facts." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009). With respect to 12(b)(1) motions in particular, "[t]he plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right." Stalley

v. Catholic Health Initiatives, 509 F.3d 517, 521 (8th Cir. 2007).

In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243-44 (3d Cir. 2012).

The Supreme Court has held that:

> In every federal case, the party bringing the suit must establish standing to prosecute the action. "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The standing requirement is born partly of "'an idea, which is more than an intuition but less than a rigorous and explicit theory, about the constitutional and prudential limits to the powers of an unelected, unrepresentative judiciary in our kind of government.'" Allen v. Wright, 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) (quoting Vander Jagt v. O'Neill, 699 F.2d 1166, 1178–1179 (C.A.D.C. 1982) (Bork, J., concurring)).

Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 11 (2004). The Court has explained that:

> In Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), we held that, to satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Friends of the Earth, Inc. v. Laidlaw Envt'l Servs (TOC), Inc., 528 U.S. 167, 180-81 (2000). However, the manner in which standing must be supported depends upon the stage of the litigation at which the issue is raised: "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" Defenders of Wildlife, 504 U.S. at 561 (quoting Lujan v. National Wildlife Fed'n, 497 U.S. 871, 889 (1990)). When a 12(b)(1) motion is filed prior to an answer, it will be considered a facial challenge to jurisdiction. Constitution Party of Pa. v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014).

FACTA was enacted in 2003 as an amendment to the Fair Credit Reporting Act (the

"FCRA"), 15 U.S.C. §§ 1681 et seq. FACTA prohibits retailers who accept credit or debit cards from "print[ing] more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." Id. at § 1681c(g)(1). In enacting FACTA, Congress was attempting to combat identity theft by reducing the personal data printed on credit and debit card receipts. Fair and Accurate Credit Transactions Act of 2003, Pub. L. No. 108-159, 117 Stat. 1952 (2003); S. Rep. No. 108-166, at 13 (2003). Those violating FACTA may be liable under the two-tiered system of liability set forth in the FCRA. See 15 U.S.C. § 1681n. A plaintiff may recover actual damages resulting from a negligent violation, § 1681*o*(a), or actual, statutory, and/or punitive damages for a willful violation, § 1681n(a).

In Spokeo v. Robins, 136 S.Ct. 1540 (2016), Thomas Robins brought suit under the FCRA when "people search engine" Spokeo disseminated incorrect information about him. The Court of Appeals for the Ninth Circuit reversed the district court decision dismissing his suit and held that he had standing because he alleged that Spokeo violated his statutory rights and that his interest in his information was personal rather than collective. But the Supreme Court concluded that the court had failed to address the issue of concreteness and had instead dealt only with the issue of particularity. Therefore, the Court remanded the case to the Ninth Circuit for further review.

The Court of Appeals for the Third Circuit addressed Spokeo in an FCRA case, In re Horizon Healthcare Services, Inc. Data Breach Litigation, 846 F.3d 625 (3d Cir. 2017). The court noted that, "[a]lthough it is possible to read the Supreme Court's decision in Spokeo as creating a requirement that a plaintiff show a statutory violation has caused a "material risk of harm" before he can bring suit, id. at 1550, we do not believe that the Court so intended to

change the traditional standard for the establishment of standing." Id. at 637-38 (footnote omitted).[2] The court concluded that:

> Spokeo itself does not state that it is redefining the injury-in-fact requirement. Instead, it reemphasizes that Congress "has the power to define injuries," 136 S.Ct. at 1549 (citation and internal quotation marks omitted), "that were previously inadequate in law." Id. (citation and internal quotation marks omitted). In the absence of any indication to the contrary, we understand that the Spokeo Court meant to reiterate traditional notions of standing, rather than erect any new barriers that might prevent Congress from identifying new causes of action though they may be based on intangible harms. In short, out of a respect for *stare decisis*, we assume that the law is stable unless there is clear precedent to the contrary. And that means that we do not assume that the Supreme Court has altered the law unless it says so.

Id. at 638 (footnote omitted). In the Horizon case, which involved claims under the FCRA arising out of two stolen laptop computers with personal information on them, the court held that standing was established:

> with the passage of FCRA, Congress established that the unauthorized dissemination of personal information by a credit reporting agency causes an injury in and of itself—<u>whether or not the disclosure of that information increased the risk of identity theft or some other future harm</u>. It created a private right of action to enforce the provisions of FCRA, and even allowed for statutory damages for willful violations—which clearly illustrates that Congress believed that the violation of FCRA causes a concrete harm to consumers. And since the "intangible harm" that FCRA seeks to remedy "has a close relationship to a harm [i.e. invasion of privacy] that has traditionally been regarded as providing a basis for a lawsuit in English or American courts," Spokeo, 136 S.Ct. at 1549, we have no trouble concluding that Congress properly defined an injury that "give[s] rise to a case or controversy where none existed before." Id. (citation and internal quotation marks omitted).
>
> So the Plaintiffs here do not allege a mere technical or procedural violation of FCRA. They allege instead the unauthorized dissemination of their own private information—the very injury that FCRA is intended to prevent. There is thus a de facto injury that satisfies the concreteness requirement for Article III standing. Accordingly, the District Court erred when it dismissed the Plaintiffs' claims for lack of standing.

---

[2] The Court of Appeals explicitly did not follow the reasoning of the Eighth Circuit in Braitberg v. Charter Communications, Inc., 836 F.3d 925, 930 (8th Cir. 2016).

Id. at 639-41 (footnotes and citation omitted) (emphasis added).

Subsequently, the court addressed another issue of standing post-Spokeo and again found that standing was satisfied. Susinno v. Work Out World, Inc., 862 F.3d 346, 351 (3d Cir. 2017) (plaintiff who received a single unsolicited call on her cell phone had standing to assert a claim under the Telephone Consumer Protection Act because complaint asserted the very harm that Congress sought to prevent and because invasion of privacy was closely related to a cause of action under common law). See also Robins v. Spokeo, Inc., 867 F.3d 1108, 1114 (9th Cir. 2017) (on remand from the Supreme Court, the Ninth Circuit cited Horizon and other cases to support finding standing element of concreteness for plaintiffs whose reputational and privacy interests were protected by the provisions of the FCRA).

Plaintiffs cite Horizon and Susinno and contend that, for the same reasons, they have standing to assert a claim under FACTA: the receipts they saw printed more than five digits of their credit cards, the very harm that Congress sought to prevent by turning the disclosure of such information into an actionable tort; and exposing a consumer to the risk of identity theft bears a close relationship to privacy interests recognized at common law. Defendant, on the other hand, contends that those two cases are distinguishable because they involved a violation of privacy-related rights, unlike Plaintiffs' claim under FACTA. Plaintiffs counter that FACTA does protect privacy interests. Defendant has not articulated a principled basis for distinguishing Horizon and Susinno based on the interests involved.

Defendant relies upon a series of district court cases which have held that plaintiffs do not have standing to assert FACTA claims. See Hendrick v. Aramark Corp., 2017 WL 1397241, at *3 (E.D. Pa. Apr. 18, 2017); Kamal v. J. Crew Group, Inc., 2017 WL 2587617 (D.N.J. June 14, 2017); Thompson v. Rally House of Kansas City, Inc., 2016 WL 8136658, at *5 (W.D. Mo.

8

Oct. 6, 2016). Plaintiffs note that all three cases predate Susinno, that Hendrick does not acknowledge Horizon and that Hendrick and Kamal rely on Reilly v. Ceridian Corp., 664 F.3d 38 (3d Cir. 2011), a pre-Spokeo case in which the Court of Appeals found standing lacking in a data breach. However, in Horizon, the court specifically distinguished Reilly, 846 F.3d at 639 n.20, on the basis that it involved common law claims, whereas in Horizon the plaintiffs cited an act in which Congress elevated the unauthorized disclosure of information into a tort.

In addition, Defendant has submitted additional authority: the Court of Appeals for the Second Circuit has decided a case under FACTA and concluded that the plaintiff did not satisfy standing requirements. See Katz v. Donna Karen Co., LLC, 872 F.3d 114 (2d Cir. 2017). See also Meyers v. Nicolet Restaurant of de Pere, LLC, 843 F.3d 724 (7th Cir. 2016) (no standing when plaintiff alleged violation of printing plaintiff's card expiration date on the receipt), cert. denied, 137 S.Ct. 2267 (2017).

Some of these cases take a circuitous route through FACTA, which Defendant adopts here. First, they observe that "FACTA does not expressly prohibit printing the identity of the card issuer on a receipt." Katz, 872 F.3d at 120. Then they delve into external sources to explain that the first six digits of a credit card number relate to the bank or card issuer and the last 10 refer to the card-holder's specific account. Kamal, 2017 WL 2587617, at *4. Thus, they conclude that, when a merchant prints the first six digits and the last four digits of a customer's card (as occurred in this case), such act does not "materially increase[] the risk of future harm, because doing so gives an identity thief no more personal information about a person's account than Congress has permitted to be printed on receipts." Id. (citation omitted).[3]

---

[3] Plaintiffs respond that printing the first six digits of a card number provides too much information to anyone who might obtain the receipt. (ECF No. 11 at 14-15 & nn.4-7.) For the reasons explained in the text, the Court should not engage in this debate.

9

This line of reasoning ignores the fact that Congress explicitly prohibited merchants from printing "no more than the last five digits of the card number." The Supreme Court has consistently held that: "In statutory construction, we begin with the language of the statute. If the statutory language is unambiguous and the statutory scheme is coherent and consistent … [t]he inquiry ceases." Kingdomware Techs., Inc. v. United States, 136 S. Ct. 1969, 1976 (2016) (citation omitted). The language of the statute is clear. As the Court of Appeals noted about this provision of FACTA in another context, "Congress demonstrated that it knew how to use language allowing for partial disclosure of information…" Long v. Tommy Hilfiger U.S.A., Inc., 671 F.3d 371, 375 (3d Cir. 2012).[4]

Defendant's argument suggests that perhaps Congress was ill-advised to draft the law in this way because the last five digits of a card may reveal more information about an individual than the first eleven. Nevertheless, the law as written specifically precludes merchants, including Kirkland's, from printing receipts in the manner that it did. It is not the business of this Court to determine whether Kirkland's actions, although indisputably in violation of FACTA's requirements, did not actually provide more personal information than Congress permitted.

Moreover, Defendants have not mentioned that the two cases from district courts within the Third Circuit have been appealed to the Third Circuit, where one of them is currently pending before that court. See Kamal v. J. Crew Group, Inc., No. 17-2345 (3d Cir. appeal filed June 22, 2017).[5] If the Court of Appeals wishes to take a different tack as to standing than it did

---

[4] In Long, the court noted that, in 2008, Congress created a "safe harbor" which effectively absolved companies of liability for printing the expiration date between 2004 and 2008. 15 U.S.C. § 1681n(d). Congress never enacted a similar safe harbor provision with respect to truncating digits of a card number and thus Defendant cannot rely on cases interpreting the safe harbor provision and the expiration date.

[5] The appeal in Hendrick was dismissed under Rule 42(b) on October 31, 2017. Similarly, another case cited by Defendant, Stelmachers v. VeriFone Sys., Inc., 2017 WL 3968871 (N.D.

in Horizon and Susinno with respect to FACTA, it may certainly do so, but this Court should not presume that result. Based upon the court's treatment of this issue in Horizon and Susinno, this Court predicts that the Court of Appeals would similarly conclude that a plaintiff who can cite an explicit violation of FACTA's truncation provision does not need to prove that he suffered or was at an increased risk of suffering actual identity theft in order to demonstrate standing for purposes of bringing suit. Therefore, Defendant's motion to dismiss for lack of standing should be denied.

Rule 12(b)(6) Standard

The Supreme Court has issued two decisions that pertain to the standard of review for failure to state a claim upon which relief could be granted. The Court held that a complaint must include factual allegations that "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). In determining whether a plaintiff has met this standard, a court must reject legal conclusions unsupported by factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements;" "labels and conclusions;" and "'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (citations omitted). Mere "possibilities" of misconduct are insufficient. Id. at 679. The Court of Appeals has summarized the inquiry as follows:

> To determine the sufficiency of a complaint, a court must take three steps.

---

Calif. Sept. 7, 2017), is also currently on appeal. See No. 17-17010 (9th Cir. appeal filed Oct. 5, 2017).

First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1947, 173 L.Ed.2d 868 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id. This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

Defendant argues that Plaintiffs have failed to state a claim for a willful violation and therefore they cannot recover any damages because they did not suffer any actual damages. Plaintiffs respond that willfulness includes reckless conduct and they have plausibly alleged that Kirkland's was aware of FACTA's requirements but recklessly continued to violate them.

The Court of Appeals has indicated that:

> The Supreme Court addressed the willfulness requirement of § 1681n(a) in Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007). In Safeco, the Court considered a provision of the Fair Credit Reporting Act which requires notice to a consumer subjected to "adverse action ... that is based in whole or in part on any information contained in a consumer [credit] report." 15 U.S.C. § 1681m(a). With respect to an insurance company, an "adverse action" is defined in part as "an increase in any charge for, or a reduction or other adverse or unfavorable change in the terms of coverage or amount of, any insurance, existing or applied for." Id. at § 1681a(k)(1)(B)(i). The defendant insurance companies in Safeco argued that they did not violate the statute by failing to give notice, because the plaintiffs' claims were based on "initial rates charged for new insurance policies." Safeco, 551 U.S. at 60-61, 127 S.Ct. 2201. The defendants argued that the initial rate for a new policy "cannot be an 'increase' because there is no prior dealing" between the parties. Id. at 61, 127 S.Ct. 2201. In other words, the defendants argued that the statutory reference to "increase in any charge" was meant to cover "change[s] in treatment for an insured, which assumes a previous charge for comparison." Id.

> The Supreme Court rejected the defendants' interpretation, concluding that applying the statute to initial rates for new policies is a "better fit with the ambitious objective set out in the Act's statement of purpose." Id. at 62, 127 S.Ct. 2201. Although finding a violation of the statute, however, the Court concluded

12

> that the violation was not willful because the willfulness component is not met "unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law *substantially greater than the risk associated with a reading that was merely careless*." Id. at 69, 127 S.Ct. 2201 (emphasis supplied). Accordingly, the Court held that a violation does not cross the willfulness threshold just because a defendant's interpretation is erroneous; it must instead be "objectively unreasonable." Id.

Long v. Tommy Hilfiger U.S.A., Inc., 671 F.3d 371, 376 (3d Cir. 2012). In Long, the Court of Appeals held that the defendant's partial printing of a card's expiration date, although unquestionably in violation of FACTA, was not a willful violation because it was not an objectively unreasonable action, particularly because there was no guidance from the courts of appeals on this issue.

In this case, Defendant argues both that its interpretation of the statute (that printing the first six and last four digits of a card number does not violate the statute) was objectively reasonable and also that its "mere awareness" of the statute's requirements is insufficient to demonstrate willfulness. Plaintiffs respond that Defendant's interpretation is not objectively reasonable and that it has alleged enough to sustain a claim for a willful violation.

Defendant relies upon Broderick v. 119TCbay, LLC, 670 F. Supp. 2d 612 (W.D. Mich. 2009). In that case, a hotel printed the first digit of the plaintiff's MasterCard number (in addition to the last four), and the parties agreed that this number signified that the plaintiff was using a MasterCard because all MasterCard numbers begin with a "5." In granting the defendant's motion for summary judgment, the court held that the phrase indicating that the merchant should not "print more than the last 5 digits of the card number or the expiration date" was "missing" something following the word "more" and that the defendant had the better argument by contending that the missing piece was "personal identifying information" because "digits" (the plaintiff's proposal) led to odd results.

13

Defendant neglects to acknowledge that Broderick is a bizarre outlier on this issue. See, e.g., Tchobian v. Fedex Office & Print Servs., Inc., 2011 WL 12842228, at *2-3 (C.D. Calif. Jan. 28, 2011) (rejecting Broderick and citing numerous cases holding that § 1681c(g)(1) is unambiguous, noting that "it would have been difficult for Congress to be more clear in its language"); Pirian v. In-N-Out Burgers, 2007 WL 1040864, *3 (C.D. Calif. Apr. 5, 2007) (calling attempts to read ambiguity into the statute "absurd" and "tortured"). Moreover, as quoted above, the Court of Appeals stated in Long that "Congress clearly indicated the scope of disclosure by specifically stating that no merchant shall print '*more than the last 5 digits* of the card number.'" 671 F.3d at 375.

Following the Long case, Judge Kelly addressed the issue of willfulness in a FACTA case and concluded as follows:

> Plaintiff's Complaint alleges facts concerning the publicity directed at merchants prior to and surrounding the 2003 passage of FACTA, including alerts from the Federal Trade Commission regarding merchant responsibilities to guard against identity theft after FACTA. In addition, the Complaint alleges that Defendant was made aware of its compliance obligations by VISA manuals and guidelines, specifically requiring the elimination of an expiration date after July 1, 2006. While the Complaint cites to trade publications not applicable to Defendant's line of business, the Complaint does allege sufficient publicity and guidance from credit card processors to place a sophisticated retailer with over 1,000 stores on notice of its obligations under FACTA. Finally, the Complaint alleges that nearly a decade after the passage of FACTA, despite being aware of FACTA's requirements, Defendant has not complied with the clear requirement to remove expiration dates from consumer receipts.
>
> In light of these contentions, the Court finds that the Complaint sufficiently alleges that Defendant's violation of FACTA was either knowing or reckless to satisfy the plausibility standard set forth in Twombly and Iqbal.

Dover v. Shoe Show, Inc., 2013 WL 1748337, at *3 (W.D. Pa. Mar. 19, 2013), report and recommendation adopted, 2013 WL 1748174 (W.D. Pa. Apr. 23, 2013) (Bissoon, J.).

Defendant asserts that "multiple district courts have dismissed FACTA complaints for

14

failure to plead willfulness where the plaintiffs made substantially similar, if not identical, allegations." (ECF No. 8 at 12.) However, a district court recently summarized the case law somewhat differently:

> Courts have almost uniformly rejected the argument that pleadings similar to those presented here are insufficient to state a plausible claim for relief. See Fullwood v. Wolfgang's Steakhouse, Inc., No. 10 Civ. 7174 (KPF), 2015 WL 4486311, at *4 (S.D.N.Y. July 23, 2015); Lavery v. RadioShack Corp., No. 13-CV-05818, 2014 WL 2819037, at *2 (N.D. Ill. June 23, 2014); Katz v. ABP Corp., No. 12-CV-4173 (ENV), 2013 WL 2444605, at *3 (E.D.N.Y. June 4, 2013); Dover v. Shoe Show, Inc., No. 12-694, 2013 WL 1748337, at *3 (W.D. Pa. Mar. 19, 2013); Sanders v. W & W Wholesale Inc., No. 11 C 3557, 2011 WL 4840978, at *2 (N.D. Ill. Oct. 12, 2011); Zaun v. Tuttle, Inc., No. 10-2191 (DWF/JJK), 2011 WL 1741912, at *2 (D. Minn. May 4, 2011); Buechler v. Keyco, Inc., No. WDQ-09-2948, 2010 WL 1664226, at *2 (D. Md. Apr. 22, 2010); Steinberg v. Stitch & Craft, Inc., No. 09-60660-CIV, 2009 WL 2589142, at *2-3 (S.D. Fla. Aug. 18, 2009); Rosenthal v. Longchamp Coral Gables LLC, No. 08-21757-CIV, 2009 WL 1854846, at *2-3 (S.D. Fla. June 29, 2009); Kubas v. Standard Parking Corp. IL, 594 F. Supp. 2d 1029, 1031-32 (N.D. Ill. 2009); In re TJX Companies, Inc., No. 07-md-1853-KHV, 2008 WL 2020375, at *2 (D. Kan. May 9, 2008); Troy v. Home Run Inn, Inc., No. 07 C 4331, 2008 WL 1766526, at *3 (N.D. Ill. Apr. 14, 2008); Follman v. Village Squire, Inc., 542 F. Supp. 2d 816, 820 (N.D. Ill. 2007); Ramirez v. MGM Mirage, Inc., 524 F. Supp. 2d 1226, 1234-35 (D. Nev. 2007); Follman v. Hospitality Plus of Carpentersville, Inc., 532 F. Supp. 2d 960, 962-63 (N.D. Ill. 2007); Korman v. Walking Co., 503 F. Supp. 2d 755, 761-62 (E.D. Pa. 2007); Iosello v. Leiblys, Inc., 502 F. Supp. 2d 782, 784-85 (N.D. Ill. 2007); Ehrheart v. Lifetime Brands, Inc., 498 F. Supp. 2d 753, 756 (E.D. Pa. 2007); Lopez v. Gymboree Corp., No. C 07-0087 SI, 2007 WL 1690886, at *2 (N.D. Cal. June 9, 2007); Arcilla v. Adidas Promotional Retail Operations, Inc., 488 F. Supp. 2d 965, 971-72 (C.D. Cal. 2007); Clark v. Marshalls of MA, Inc., No. CV 06-8135 ABC (SHx), 2007 WL 1100412, at *1 (C.D. Cal. Mar. 12, 2007). But see Crupar-Weinmann v. Paris Baguette Am., Inc., No. 13 CIV 7013 (JSR), 2014 WL 2990110 (S.D.N.Y. June 30, 2014); Komorowski v. All-American Indoor Sports, Inc., No. 13-2177-SAC, 2013 WL 4766800 (D. Kan. Sept. 4, 2013); Vidoni v. Acadia Corp., No. 11-CV-00448-NT, 2012 WL 1565128 (D. Me. Apr. 27, 2012); Gardner v. Appleton Baseball Club, Inc., No. 09-C-705, 2010 WL 1368663 (E.D. Wisc. Mar. 31, 2010). In rejecting the argument, courts have noted that it is inappropriate at the motion to dismiss stage to affirmatively decide whether the defendant willfully violated FACTA so long as the complaint plausibly suggests a willful violation. Lavery, 2014 WL 2819037, at *2; Katz, 2013 WL 2444605, at *3; Dover, 2013 WL 1748337, at *2-3; Sanders, 2011 WL 4840978, at *2; Steinberg, 2009 WL 2589142, at *3; Troy, 2008 WL 1766526, at *2; Follman/Village Squire, 542 F. Supp. 2d at 820; Follman/Hospitality Plus, 532 F. Supp. 2d at 963; Korman, 503 F. Supp. 2d at

15

> 761; Iosello, 502 F. Supp. 2d at 785; Lopez, 2007 WL 1690886, at *2.
>
> Moreover, the applicable FACTA provision is clear and unambiguous: "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." 15 U.S.C. § 1681c(g)(1); see Arcilla, 488 F. Supp. 2d at 970; Ramirez, 524 F. Supp. 2d at 1234-35; Iosello, 502 F. Supp. 2d at 785-86. Here, Defendants allegedly provided Plaintiff with an electronically printed receipt that showed the first six and last four digits of Plaintiff's credit card number, in clear violation of the statute. If true, Defendants conduct has no basis in statutory text and is therefore objectively unreasonable. See, e.g., Buechler, 2010 WL 1664226, at *2; compare with Safeco, 551 U.S. at 50 (holding company's conduct was in accord with an interpretation that had foundation in the statutory text and thus was not objectively unreasonable); Van Straaten v. Shell Oil Prods. Co. LLC, 678 F.3d 486, 490-91 (7th Cir. 2012) (applying Safeco to conclude it was not objectively unreasonable interpretation of § 1681c(g) to print the last four digits of the account number); see also Shlahtichman v. 1-800 Contacts, Inc., 615 F.3d 794, 803-04 (7th Cir. 2010) (applying Safeco to hold it was not objectively unreasonable under § 1681c(g) to print expiration date on e-mailed receipt).

Thompson v. Rally House of Kansas City, Inc., 2016 WL 9023433, at *3-4 (W.D. Mo. Jan. 25, 2016). The court was unpersuaded by the cases finding that willfulness was not met because they focused on subjective intent, when the Supreme Court held in Safeco that an objective standard applies. Id.

Similarly, Plaintiffs have alleged that Kirkland's had actual knowledge of FACTA's truncation requirements or acted recklessly with respect to them, specifically the requirement that no more than the last five digits of credit and debit cards be printed on receipts presented to consumers at the point of sale; that Kirkland's has had agreements with various credit card issuers, including VISA, Mastercard, American Express and others, which would have apprised Kirkland's of its obligation to truncate credit and debit card account numbers; that Kirkland's received periodic communications from credit card issuers and/or its merchant bank advising it of its obligation; that it received monthly statements from its merchant bank or other similar entity that would have apprised it of this obligation; that it should have received this information

16

from its Point of Sale provider; and that it should have received it from trade association and/or other similar entities. (Compl. ¶¶ 47-52.)

Defendant argues that Plaintiff's reading of the statute would turn every violation into a willful violation, which would defeat Congress' two-tiered structure of damages. It relies on Trans World Airlines, Inc. v. Thurston, 469 U.S. 111 (1985), a case brought under the ADEA. As Plaintiffs note, the case was decided on summary judgment, where a developed record showed that TWA had made a reasonable effort to comply with the statute and therefore the plaintiff could not collect statutory damages based on a willful violation of the statute. No such record exists yet in this case. As to why Congress provided for statutory damages in FACTA cases, a court has made these observations:

> Although the congressional record is silent about why Congress provided for statutory damages in these amounts, we presume that the statutory damages serve a compensatory function. See L.A. News Serv. v. Reuters Television Int'l., Ltd., 149 F.3d 987, 996 (9th Cir. 1998) (noting that awards of statutory damages can serve compensatory, punitive and/or deterrent purposes). That Congress provided a consumer the option of recovering either actual or statutory damages, but not both, supports the presumption that they serve the same purpose. We further note that Congress provided for punitive damages in addition to any actual or statutory damages, see 15 U.S.C. § 1681n(a)(2), which further suggests that the statutory damages provision has a compensatory, not punitive, purpose. See Harris v. Mexican Specialty Foods, Inc., 564 F.3d 1301, 1312 (11th Cir. 2009) (concluding that, because FACTA provides separately for punitive damages, the statutory damages provision is not punitive).
>
> The need for statutory damages to compensate victims is plain. The actual harm that a willful violation of FACTA will inflict on a consumer will often be small or difficult to prove. As the Seventh Circuit similarly noted in Murray [v. GMAC Mortgage Corp.], under the FCRA "individual losses, if any, are likely to be small—a modest concern about privacy, a slight chance that information would leak out and lead to identity theft. That actual loss is small and hard to quantify is why statutes such as the Fair Credit Reporting Act provide for modest damages without proof of injury." 434 F.3d [948,] 953 [(7th Cir. 2006)].
>
> In addition to that compensatory function, FACTA's actual and statutory damages provisions also effectuate the Act's deterrent purpose. See L.A. News Serv., 149 F.3d at 996 (noting that statutory damages help "sanction and vindicate

the statutory policy of discouraging infringement" (internal quotation marks
omitted)). In fashioning FACTA, Congress aimed to "restrict the amount of
information available to identity thieves." 149 Cong. Rec. 26,891 (2003)
(statement of Sen. Shelby). Allowing consumers to recover statutory damages
furthers this purpose by deterring businesses from willfully making consumer
financial data available, even where no actual harm results.

Bateman v. American Multi-Cinema, Inc., 623 F.3d 708, 718 (9th Cir. 2010).

As Plaintiffs observe, at this stage of the proceedings, there is no record as to the reasons why Kirkland's violated FACTA or what it did or did not do to comply with the law. The fact that Kirkland's partially complied (by deleting some numbers, but not the proper ones or enough of them) might be the result of inadvertence or it might mean that Kirkland's was aware of the statute's requirements but made a business decision not to correct its practices to save money.[6] There is no way that Plaintiffs could know enough about the internal policies of Kirkland's to allege more than they have alleged in this matter. For the reasons cited in the Thompson case, it would be inappropriate to dismiss this case at this point on the ground that Plaintiffs' allegations of willfulness are insufficient. Therefore, Defendant's motion to dismiss for failure to state a claim upon which relief could be granted should be denied.

For all the reasons cited above, it is respectfully recommended that the defendant's motion to dismiss (ECF No. 7) be denied.

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections by December 13, 2017. Any party opposing the objections shall file a response by December 27, 2017. Failure to file timely objections will waive the right of appeal.

---

[6] Defendant again argues that the first 6 digits reveal only the bank that issued the card, to support its contention that printing them does not pose an "unjustifiably high risk of harm." For the reasons cited above, the Court should not delve into this issue when the Act clearly prohibits printing more than the last 5 digits of a card, as Kirkland's allegedly did here.

Date: November 29, 2017

s/Robert C. Mitchell
ROBERT C. MITCHELL
United States Magistrate Judge